ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

GEORGE D. READ.

1.  FREE RAILROAD PASSES—*to what extent railroad companies may, by special
contract, be exempted from liability for injuries to passengers.*   A passenger, while
traveling in the cars of a railroad, received injuries to his person, occasioned
by a collision of trains.   At the time of the accident, the passenger was
traveling under a free pass given him by the company, upon the back of which
was this printed endorsement: "The person accepting this free ticket assumes
all risks of accidents, and expressly agrees that this company shall not be
liable, under any circumstances, whether of negligence of their agents, or
otherwise, for any injury to the person, or for any loss or injury to the
property, of the passenger using the ticket."   In an action on the case against
the company, to recover damages for the injuries thus received by the passen-
ger, it was *held,* that this agreement did not exempt the company from liability
for the gross negligence of its employees, but it did exempt it from liability
for any other species or degree of negligence not denominated gross, or which
might have the character of recklessness.   For such unavoidable accidents, as
will happen to the best managed railroad trains, this agreement would be a
perfect immunity to the company.

2.  Railroad companies have a right to restrict their liability as common
carriers, by such contracts as may be agreed upon specially, the companies
still remaining liable for gross negligence or wilful misfeasance, against which
good morals and public policy forbid they should be permitted to stipulate.

3.  CONTRACT—NOTICE—*which of these the endorsement constitutes.*   The en-
dorsement upon the back of this pass was not a mere notice, like the one in
*Newhall's* case, 24 Ill., 466; the free ticket was a gratuity, and the acceptance

and use of it established the endorsement thereon as an agreement between the party giving and the party receiving. By using the ticket, the passenger assents to the terms on which it was given, and it becomes, to all intents and purposes, an agreement.

4. CORPORATIONS—*to what extent liable for the acts of their employees.* All corporations act by and through their agents, for whose acts, in the line of their business, the corporation appointing them is held liable. A corporation will be held responsible for the unlawful acts of its employees or agents, which include wilful injuries, or injuries resulting from gross negligence.

5. The distinction attempted to be made by the New York courts, between the negligence of the corporation, acting through its president and board of directors, and the negligence of their employees or servants and agents, is not recognized in this State.

6. PLEA OF RELEASE—*its requisites.* It is not necessary, in pleading a release, that it should be averred it was under seal. A release, *ex vi termini*, imports a seal; and it is a matter of evidence, whether it have a seal or not, if a seal be necessary.

7. SEAL—*not necessary to a release.* But it has been held that a release of a debt secured by mortgage need not be under seal, *a fortiori*, it need not be when prospective damages are released, as in this case.

8. PLEADING—*plea to the whole declaration—its requisites.* In an action on the case to recover damages resulting from the negligence of the defendant, three of the counts in the declaration averred gross negligence, while another count averred negligence only. A plea to the whole declaration was held bad on demurrer, because it did not answer the charge of gross negligence.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an action on the case brought in the court below against the appellant to recover damages for an injury to the person of the appellee, alleged to have been received by him whilst riding on the cars and over the road of the appellant. The several counts of the declaration are in the usual form, in actions for personal injury by a passenger against a common carrier, alleging negligence and carelessness on the part of the appellant, its agents and servants, and three of the counts charging the negligence to have been *gross*.

To this declaration the appellant pleaded the general issue, and four special pleas. The second plea alleges, that, prior

to the injury, the appellant, at the special instance and request of the appellee, and without any consideration therefor, other than the agreement of the appellee thereinafter mentioned, issued and delivered to the appellee a *free ticket* or *pass*, entitling him, for a certain time, to ride on the cars and over the road of appellant without paying any compensation therefor. That the appellee, in consideration thereof, assumed all risks of accidents, and expressly agreed that the appellant should not be liable, under any circumstances, whether of negligence of its agents or otherwise, for any injury to the person, or any loss or injury to the property of the appellee, whilst he, as a passenger, should be using said ticket. That at the time of the alleged injury, the appellee was riding on the cars of the appellant, without paying any consideration therefor, under and by virtue of said ticket, and using said ticket for that purpose; and that the injury to the appellee, if any, occurred without any fraud or misconduct on the part of the appellant or any of its directors.

The third plea, after setting out the issuing and delivery to the appellee of the free ticket or pass, substantially as in the second plea, alleges that there was endorsed upon said ticket an agreement as follows: "The person accepting this free ticket assumes all risks of accidents, and expressly agrees that this company shall not be liable, under any circumstances, for any injury to the person, or for any loss or injury to the property of the passenger using this ticket." That the appellee accepted said ticket subject to and upon the said agreement, and thereby became and was bound by the terms and conditions thereof; that at the time of the injury, appellee was using the ticket as a passenger, and riding upon the cars of the appellant by virtue of said ticket, without paying any compensation therefor; and that the injury, if any, happened without the fault of the appellant or any of its directors.

The fourth plea is substantially like the second, alleging, however, in conclusion, that the negligence, if any, which

occasioned the injury complained of, was the negligence of the agents and employees of appellant, *solely*.

The fifth plea alleges, that after the committing of the several supposed grievances in the said declaration mentioned, the appellee, for a valuable consideration, released and discharged the appellant from any and all liability by reason of the same.

To the second, third and fourth pleas, a general demurrer was filed by appellee, and to the fifth plea the appellee demurred specially, assigning for cause, "that it does not appear, by said fifth plea, that the said supposed release or discharge was, or is under seal." The court sustained the demurrers, and the appellant elected to stand by its pleas.

The cause then came on to be tried before a jury upon the issue formed upon the first plea.

The evidence on the part of the appellee, as presented in the bill of exceptions, shows that the injury complained of, consisted of a scalding of his right hand. That it occurred at or near Clinton, in De Witt county, before daylight of January 8, 1862. That the morning was very dark and foggy, and the railroad track very slippery; and that the occasion of the injury was the running of the engine of a freight train into the car in which the appellee was riding. The appellee having rested, appellant offered to prove by witnesses in court, and sworn, the facts set forth in the special pleas, and each of them. Appellee objected to the introduction of such evidence, and the court sustained the objection, and refused to allow said facts, or any of them, to be proved to the jury; and the appellant excepted.

Upon the conclusion of the evidence, the court instructed the jury on behalf of the appellee, the plaintiff below, as follows:

1. The jury, in assessing damages in this action, may take into consideration, not only the loss, expense and injury arising from the injuries received at the time of the accident, as well as the bodily pain and mental suffering

of the plaintiff; but also the prospective loss and damage, if any, arising from any disability resulting to plaintiff, which renders him less capable of attending to his business than he would have been if the injury had not been received.

2. The jury, in assessing the damages in action, may take into consideration, not only the bodily disability occasioned by the accident, but also any impairment of his intellectual faculties and general health, if any, which they are satisfied, from the evidence, will affect or impair his future ability to attend to his business the same as if the injury, complained of, had not been received.

3. If the jury believe, from the evidence in this case, that plaintiff, while traveling on defendant's road, received through the agency of said defendant, any injury to health, life or limb, the result of gross negligence, then he is entitled to recover such damages as will recompense to him the loss, or losses, he may have sustained, as the result of such injury or injuries.

4. If the jury believe, from the evidence, that the defendant has been injured in health of body or mind, or in his limbs, so that his ability to labor and attend to his affairs, and generally pursue the course of life he might otherwise have done, as well since as before the accident, and such injuries were inflicted upon him through the gross negligence of defendant, while being carried as a passenger upon the road, the jury may assess such damages, present and prospective, as will recompense to him all the losses he may have sustained as a result of such injuries.

5. In estimating the plaintiff's damages, it is proper for the jury to estimate the effect of the injury in future upon the plaintiff's health, if any, the use of his hand, and his ability to attend to his affairs generally in pursuing his course of life, and the bodily pain and suffering; the necessary expenses of medical care and loss of time, and all damages, present and prospective, which can be treated as a necessary result to the injury inflicted by the collision upon the plaintiff in this action.

To all of which instructions, and the giving of the same, and each of them, by the court, the defendant, by its counsel, excepted.

At the instance of defendant's counsel, the court gave this instruction to the jury:

The jury are instructed that, in estimating the damages in this case, the jury are not authorized to award vindictive or exemplary damages, although the jury may believe, from the evidence, that the agents of the defendant were guilty of negligence which caused the injury complained of.

The jury returned a verdict for the plaintiff for the sum of $4,000, a new trial was moved for and denied, appellant excepting, and judgment was entered upon the verdict.

The errors assigned upon the record question the correctness of the rulings and decisions of the court below: 1st, in sustaining the demurrers to complainant's special pleas; 2d, in refusing to permit evidence to be given to the jury tending to establish the facts set up in said pleas; and 3d, in overruling the appellant's motion for a new trial. And in all and each of these several rulings, the appellant insists that the Circuit Court erred; and the points made on behalf of the appellant may be stated as follows:

*First.* That the second, third and fourth pleas, and each of them, set up an agreement between the parties, which, if competent to be entered into by them, fixes and determines their rights and liabilities in this action.

*Second.* That it was competent for the parties to make said agreement, and when made, it was valid and binding; and that by its terms the appellant was relieved from all liability for the injuries complained of.

*Third.* That the fifth plea is good in law, it not being necessary to the validity of a release, that it should be under seal, and therefore not necessary that it should be so pleaded.

*Fourth.* That the court below gave improper instructions to the jury, at the instance of the appellee.

Messrs. McAllister, Jewett & Jackson for the appellant:

1.  Chitty defines a contract or agreement, not under seal, to be "a mutual assent of two or more persons, competent to contract, founded upon a sufficient and legal motive, inducement or consideration, to perform some legal act, or omit to do anything, the performance whereof is not enjoined by law." Blackstone defines a contract to be "an agreement, upon sufficient consideration, to do, or not to do, a particular thing." Tested by either of these definitions, it is insisted that the agreement set up in the second, third and fourth pleas contains all the elements of a valid contract. There are the competent parties, assenting; the sufficient and legal motive, inducement or consideration, to wit: the free carriage of the appellee, and the thing to be done by the appellee, to wit: the assumption of the risks of injury from the negligence of the agents and servants of appellant, and his agreement that the appellant should not be liable therefor. The form of the contract, as stated in the third plea, is also such substantially as prevails, and has been held valid, in the business of common carriers, or in bills of lading and special receipts. So that, independent of the authorities hereafter cited, which pronounce such contracts complete and valid, it is insisted that the definition of a valid contract or agreement, in respect to the component parts thereof, is fully met and answered by the statements of these pleas.

2.  It was competent for the parties to make the agreement, exempting the company from liability for any and all negligence, of whatever degree. *Welles* v. *New York Central Railroad Co.*, 26 Barb., 641; *Smith, adm'r,* v. *New York Central Railroad Co.*, 29 Id., 132; *Bissell* v. *New York Central Railroad Co.,* Id., 602; *Perkins* v. *New York Central Railroad Co.,* 24 N. Y. Rep., 196. In this last case, the principles and reasoning applicable to the case at bar, are well stated in the opinion of E. D. Smith, J., concurred in by Ch. J. Selden and J. Denio, Davis, Allen and Gould. At page 204, he says: "The defendants are transporting persons and passengers by

the powerful agency of steam, and when accidents occur, they are liable to be attended, more or less, with serious consequences. This the parties both well knew, and they also well knew, that railroad accidents were of frequent occurrence; that railroad travel was subject constantly to perils resulting from the carelessness and negligence of engineers, conductors, etc.; that trains are frequently thrown off the track, or come in collisions, etc., and that all such accidents involve, unavoidably, more or less loss of life, or limb, or bodily injury, and other disastrous consequences. With perfect knowledge of these facts, Mr. Perkins asked for and accepted the free pass upon the express condition that he should assume all risk of accidents. And expressly agreed that the company should not be liable under any circumstances, whether by the negligence of the defendant's agents or otherwise, for injury to the person, etc. Such is the bargain. It can mean nothing else, than that Perkins will take for himself the risk of all accidents and injuries to his person, attending his contemplated trip, in the defendant's cars, from Rochester to Albany, so far as such accidents and injuries might result from the negligence of the defendant's agents and servants." And further on, at page 205 : "Without an agreement, exempting and absolving them from all liability in respect to such accidents, and the injuries resulting therefrom, the defendants would be legally responsible for such injuries. Mr. Perkins assumes the risk for himself for such injuries. He becomes his own insurer. He absolves the defendants, in advance, from all liability for any injury to his person from such negligence. It was a fair insurable risk, and Perkins agreed to assume it for himself." Upon this reasoning, the judgment of the Supreme Court, in favor of the plaintiff, was reversed.

The case of *Wells* v. *New York Central Railroad Co.*, above cited, from 26 Barbour, was carried to the Court of Appeals, and is again reported in 24 New York Reports, 181, and the judgment of the Supreme Court, in favor of the defendant, affirmed. The opinion of the court, concurred in by Justices

DENIO, DAVIS, ALLEN and SMITH, was delivered by GOULD, J., and remarking that some question was made, whether the endorsement on the ticket is a contract, he says, (page 183,) " It seems necessary to say, that the word '*agreed,*' means the concurrence of two parties, and that the act of acceptance binds the acceptors as fully as his hand and seal would." And then, referring to Co. Litt., sec. 217, note, 5 Hill., 258–9, 1 Seld., 229, 27 Barb., 130, he adds: " The point is too well settled to admit of debate." And at page 184, he says: "As to the construction of the contract, it would seem, from what has been said, that the term *gross negligence,* as used in the law, has a technical meaning, which is not properly applicable to those acts of servants of a corporation, for which the corporation is responsible, though as between their acts, which are slightly negligent, and those which are very negligent, there is no very different rule of responsibility. It is the fact of negligence,  (mere negligence,) and not its degree, which incurs the liability.

" This being so, and taking the terms of this contract— 'the company shall not be liable, under any circumstance, whether of negligence of their agents or otherwise, for any injury, etc., of the passenger using this ticket'—against what liability does it contend ? We are not to give it a construction that would make it illegal, unless that be the only fair construction; and its plain purport provides against 'circumstances of negligence,' the words '*or otherwise,*' being too vague to be held to bear any meaning. It is, then, a contract not to be liable for the mere negligence of the agents of the company." And at page 185, "Upon the reasoning above, and upon any legal principle, whether founded upon public policy or otherwise, *there seems to be nothing illegal in such a contract.* It cannot reasonably be said, that because five or ten persons, on a train that contains two hundred, have such passes, there is the less inducement to care on the part of the company or its agents, or that a feeling of indifference to human life would be thereby caused. The *quantum* of interest, the ratio of motive, is too utterly

insignificant, when compared with the vast liability not pro-
tected by any contract, and binding the company and its
agents to every measure of caution.    That agents will be
careless, we have frequent and terrible proof.    But the hold-
ing of such contracts illegal would not even tend to alter the
fact."

The case of *Smith, adm'r*, v. *New York Central Railroad Co.*,
above cited from 29 Barbour, was taken to the Court of
Appeals, and is again reported in 24 N. Y. Rep., 222.

It was an action brought under the statute of 1847, for the
negligent killing of one Ward, and it appears from the state-
ment of the case, that Ward had a lot of hogs to ship from
Buffalo to Albany, and contracted with the defendant for
two cars for that purpose.    The contract set forth that the
hogs were carried at a reduced price in consequence of the
owner's assuming certain risks in respect to their safety, etc.
It also contained this clause: "And it is further agreed, that
the persons riding free to take charge of this stock, do so at
their own risk of personal injury from whatever cause."
Ward went on the train in charge of the hogs, and paid
nothing additional therefor.    He was also furnished with
what is called a drover's ticket, passing him free over de-
fendant's road.    The judgment of the Supreme Court, in
favor of the plaintiff, was affirmed, but without in any man-
ner overriding or interfering with the opinions and reason-
ings in the cases of Welles and Perkins, above cited. WRIGHT,
J., who delivered the principal opinion, in favor of affirmance,
after reciting the facts, says, at page 227, "In no just sense
could these persons be regarded as gratuitous passengers;
and although the carriers assume to treat them as riding free,
they were not, as it was a condition of the contract that they
were to ride with the train to take care of the stock, and the
consideration paid to the defendant was as well for such pas-
sage as for the carriage of the property itself." And further
on, at page 228—"The accident resulted (as the jury must
have found) from the use, by the defendant, of an *unsafe and
dangerous car*, with a flattened wheel, which caused it to leave

the track. Providing and using such a vehicle was the neg-·
ligence of the carriers, culpable and inexcusable. It is,
therefore, quite unnecessary to inquire whether there is
really anything practical in the definition of the degrees of
negligence heretofore attempted by courts and text writers,
or whether the carriers, being a corporation, may contract
against liability for the negligence of its employees and
servants." The opinion of Justice WRIGHT turns, then, upon
two points : 1st, That Ward was not a gratuitous passenger.
2d, That the negligence which occasioned the injury was the
negligence of the company itself. At page 236, it is stated,
that "DENIO and DAVIS, Js., were of opinion that there is no
general public policy forbidding a contract by which a rail-
road corporation should be exempt from liability for the neg-
ligence of its agents in respect to a purely gratuitous passen-
ger ; but they thought that the railroad act and its policy
prohibit a contract for such exemption with a paying passen-
ger. They were for affirmance, on the ground that the
plaintiff's intestate was not a gratuitous passenger.

SMITH, J., was for affirmance, on the ground that "the
negligence was that of the corporation itself." And SOUTH-
ERLAND, J., for the reason that, "in his opinion, the contract
of exemption was void, irrespective of whether the transpor-
tation was gratuitous or for hire."

Justice ALLEN, in a very able, dissenting opinion, concurred
in by Ch. J. SELDON, and GOULD, J., insists that this case falls
within the principle of the case of *Perkins* v. *New York Central
Railroad Co.*, and that the judgment therefore should be re-
versed. And in that opinion, at page 236, he says : "It is
enough that a special contract is made upon a consideration,
which the parties have agreed to be adequate. Most cer-
tainly the courts will not, in an action upon a policy of in-
surance, inquire into the sufficiency or adequacy of the
premium, as a consideration for the risks assumed. The
deceased here agreed, in consideration that the defendant
would take his stock at a given rate for transportation, and
permit him to ride over the road without additional charge,

to take charge of the stock, that he would assume and bear all the risks of the journey; and who shall sit in judgment upon this contract, and say it was without consideration, or that the consideration was unlawful, or that the contract was against public policy? As said before, the decision in *Perkins* v. *New York Central Railroad Co.* is decisive of this case."

Thus it appears that six of the eight judges composing the New York Court of Appeals, expressed opinions that fully sustained the defence set up in the second, third and fourth pleas in the case at bar, although the judgment in that case was affirmed upon grounds, and for reasons, not applicable here; and only one of said judges held that such a contract was invalid.

The same question, under nearly identical circumstances, came before the New York Court of Appeals in the case of *Bissell* v. *New York Central Railroad Co.*, above referred to, and is reported in 25 N. Y. Rep., 442. It seems that Bissell, plaintiff's intestate, was a cattle shipper, and signed a contract with defendant, similar to the one in the case of Smith, and received a free pass to enable him to accompany and take care of his stock, on the back of which was printed the following: "*Notice.*— The owner of stock receiving this ticket, assumes all risks of accidents, and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence by their agents, or otherwise, for any injury to the person, or for any loss or injury to the stock," etc.

The judgment of the Supreme Court, in favor of the plaintiff, was reversed. The prevailing opinions were delivered by Justices GOULD, SELDEN and SMITH, and concurred in by Js. DAVIS and ALLEN, and, without quoting from their opinions, it may be sufficient to say, that they all regarded the case as falling within the principle and reasoning of the cases *Welles* and *Perkins* v. *New York Central Railroad Co.*, and therefore controlled by them. Ch. J. DENIO, in a separate opinion delivered by him, (page 455,) recognized and adhered to the doctrine of the Welles and Perkins cases, but

dissented from the majority of the court in this particular case, upon the distinction taken by him in the case of Smith; and holding, that, under the particular facts of this case, Bissell was not a *gratuitous passenger*.

We claim it as a clear result from each of the cases above referred to, that with a gratuitous passenger, it is competent for a railroad company to enter into a contract for exemption from liability for injuries resulting to such passenger from the negligence of the company's agents and servants, and that such a contract with such a passenger is valid, lawful, and not against public policy, and is a good defence to an action to recover damages in consequence of such injuries. The second, third and fourth pleas each allege that the appellee was a gratuitous passenger; that he entered into a contract, exempting the appellant from liabilities for such injuries; and they further state, in substance, and the proof shows that the injuries to the appellee were the consequence of the negligence of the agents and servants of appellant, and not of the corporation itself, or any of its principal or managing officers— and from the same cases, it appears, (and it would be apparent even without an authority upon the point,) that in such a case, the distinction sometimes attempted to be established between different degrees of negligence, can have no influence in determining the appellant's liability.

The cases above cited are, we think, the only ones in which the precise questions made on this record have been decided, and we desire it distinctly understood, that we rest this part of the appellant's case upon the *express agreement* of the parties, as set up in the pleas, and offered to be proved on the trial, and not upon the mere fact of gratuitous carriage—the gratuitous carriage being only the consideration for the agreement which is urged as a full defence.

3.   We submit the question raised by the demurrer to the fifth plea, by referring simply to the case of *Benjamin* v. *McConnell et al.*, 4 Gilman, 536, in which Justice PURPLE, who delivered the opinion of the court, at page 545 says:

" Where a consideration is expressed in a release, or otherwise proved to have passed between the parties, it is, in the opinion of the court, totally immaterial, whether the instrument is sealed or otherwise." And further on, "I have not been able to find one authority, that a release not under seal, when made for a good or valuable consideration, is not of binding force."

Mr. THOMAS HOYNE for the appellee :

The appellant, as a corporation, being a common carrier of passengers, according to law, cannot contract against its own gross negligence under any circumstances.

1. The law exacts from the carriers of passengers *extraordinary* care 'and diligence. *Caldwell* v. *Murphy*, 1 Duer, 241; *Ingalls* v. *Bills*, 9 Metc., 1; *Frink* v. *Potter*, 17 Ill., 406; *Galena and Chicago Railroad Co.* v. *Yarwood*, 17 Ill., 509; *Galena and Chicago Railroad Co.* v. *Fay*, 16 Ill., 558; *Tuller* v. *Talbot*, 23 Ill., 357; *Briggs* v. *Taylor*, 28 Vt., 180; *Hood* v. *N. H. Railway*, 22 Conn., 1; *Hall* v. *Connecticut Steamboat Co.*, 13 Conn., 319; *Boyce* v. *Anderson*, 2 Peters, 150; *Stokes* v. *Saltenstall*, 13 Peters, 181; 1 McLean, 540; 2 McLean, 157; *Stockton* v. *Fay*, 4 Gill., 406; *Hollister* v. *Norton*, 19 Wend., 236; *McElroy* v. *Nashua and Lowell Railroad Co.*, 4 Cush., 40.

2. Nor does it in any way change the liability of the carrier, that the passenger is carried *gratuitously* or without *payment of fare*.

It has been decided in two important cases by the United States Supreme Court, that it makes no difference whether a service is performed *gratuitously or not, in regard to the obligation to perform it well, after it is once entered upon.* *Derby* v. *Philadelphia and Reading Railroad Co.*, 14 How., 483; *Steamboat New World* v. *King*, 16 How., 469–474.

And our court has also, following the general current of authority, decided this question in 30 Ill., 23, the case of the *Ohio and Mississippi Railroad Co.* v. *Muhling*, in which Justice WALKER, delivering the opinion, says: "But even if they were

32

carrying the passenger *gratuitously*, it could make no difference. When a person is on a train, under such circumstances, the only inquiry is, whether he was lawfully there, and not whether he had paid his money for the privilege."

But the appellants insist, notwithstanding the uniform current of authority in cases like this, that the payment of fare makes no difference in the liability assumed by the carrier, but still there is a difference between a *gratuitous assumption* of the risk and other cases. And the point is made, that a *gratuitous passenger* may contract so as to exempt the carrier from any liability on account of any negligence, however gross.

The farthest extension of the rule, even in cases of common carriers of property, has never gone beyond allowing them to restrict their liability by *special contract*, mutually agreed upon, but never exempting the carrier from his liability on account of *gross negligence*.

In the case of the *Illinois Central Railroad Co.* v. *Crabtree* and *Morrison*, 19 Ill., 136, Mr. Justice BREESE, delivering the opinion, expresses in terse and vigorous language, the true doctrine to be found in all the English and American cases. He says : " We think the rule a good one, as established in England and in this country, that railroad companies have a right to restrict their liability as common carriers by such contracts as may be agreed upon specially, they still remaining liable for *gross negligence*, against which public policy and good morals forbid that they should be permitted to stipulate." See 2 Ohio Rep., 131; 7 Hill, 292; 16 Penn. State Rep., 67; 4 Sandf., 136; 5 Sandf., 180 ; 6 How., 344.

The case at bar invokes all the authority and reasoning of these decisions. It is a case of *gross* negligence. The appellants were sued for the tort committed, in case, and not in assumpsit upon the contract. The ground of the recovery below was the wilful misconduct of defendants in destroying the usefulness and mutilating one of the limbs of the appellee. Their obligations to the passenger and the public have been violated in his person. It is one of the cases where

the law will not permit a contract to stand which gives impunity to so great a wrong.   The contract may be, however, specifically agreed upon ; and yet, being against good morals and sound public policy, it will be treated as void : because the courts do not permit corporations as carriers of passengers, using the dangerous agency of steam, to stipulate for impunity against acts of negligence which endanger the safety of their passengers, and the lives of the citizens for whose convenience they have been incorporated and invested with their privileges.

In the case of *Sager* v. *The Portsmouth Railroad Co.*, 31 Maine R., 228, Chief Justice SHEPLEY says: "The very great danger to be anticipated by permitting railroad companies to enter into contracts to be exempt from losses occasioned by misconduct or negligence, can scarcely be over estimated. It would remove the principal safeguard for the preservation of life and property on such conveyances." And the agreement in that case was held no exemption to the company.

But, even did any doubt exist in regard to the void character of the attempt which has been made to stipulate against law for the exemption claimed by appellants in this case, I should insist upon the authority of all the cases, that the *printed endorsement* on the *back of the ticket or free pass* was only a *notice*, and not an express stipulation or contract by which Mr. Read was bound, because he traveled on the road and accepted the privilege tendered him.

This court has considered the question of *notice* in the case of common carriers, in the case of *The Western Transportation Co.* v. *Newhall*, 24 Ill., 468.

Justice BREESE, in that case, says : "That it is well settled in this country, that a common carrier cannot, by a general notice, even if brought home to the owner of the goods, limit, restrict, or avoid the liability imposed upon him by the common law.   And that no distinction can be made between a public notice in the newspapers or by hand bills;

and the *notice* conveyed by a receipt, *it being printed on the back of it*—for *wherever it may be found, it is but a notice.*"

The case at bar, then, being put upon the ground of *contract* by appellants, because a printed notice was on the back of the ticket used, comes clearly within the rulings of the case of Newhall. It can make no difference, as we have seen that it was a *free ticket*. And on a ticket with the *fare paid*, the *endorsement*, as we have seen, could not be treated otherwise than a *notice*, and not as a *contract*.

Mr. Hoyne cited and commented upon the cases in New York which hold a different rule in regard to the main question, insisting that they are not sustained by reason or authority; and referred to the opinion of Mr. Justice WRIGHT, in the case of *Smith* v. *The New York Central Railroad Co.*, 24 N. Y., 223, as indicating a returning sense of reason and justice in the court of that State. Mr. Justice WRIGHT said: " Whether a carrier, to whose exclusive charge the safety of a passenger has been committed, by his own culpable negligence and misconduct, shall put in jeopardy the life of such passenger, is a question affecting the public, and not the party alone, who is being carried. It is said, the passenger should be left to make *whatever contract he pleases;* but, in my judgment, the public having an interest in his safety, he has no right to absolve a railroad company, to whom he commits his person, from the discharge of those duties which the law has enjoined upon it, in regard for the safety of man. Can a contract, therefore, which allows the carrier to omit all caution, or vigilance, and is, in effect, a license to be culpably negligent, to the extent of endangering the safety of the passenger, be sustained? I think not. Such a contract, it seems to me, manifestly conflicts with the settled policy of the State in regard to railroad carriage. Its effect, if sustained, would obviously enable the carrier to avoid the duties which the law enjoins in regard to the safety of men, encourage negligence and fraud, and take away the motive of self-interest on the part of such carrier, which is, perhaps, the only one adequate to secure the highest degree of caution

and vigilance.   A contract with these tendencies is, I think, contrary to public policy, *even when no fare is paid.*"

Mr. George C. Campbell for the appellant, in reply:

The appellee does not make the distinction between the negligence of the defendant as a corporation, acting through its president and board of directors, and that of its subordinate agents.

This distinction is taken in all the cases bearing on this question.

As to the degree of care required from common carriers of passengers, I concur, substantially, with the learned counsel for the appellee.

By the common law, a common carrier is responsible to any passenger carried by him for all injuries to his person or property during the journey, resulting from "a want of that circumspection and diligence which is characteristic of cautious persons, where the limbs, lives and health of human beings are at their control."   Angell on Carriers, sec., 523; 2 Kent's Com., 600; *Camden and Amboy Railroad Co.* v. *Burke,* 13 Wend., 611; *Fuller* v. *Naugatuck Railroad Co.,* 21 Conn., 557; *Frank* v. *Potter,* 17 Ill., 509; *Galena and C. M. Railroad Co.* v. *Rae,* 18 Ill., 489; *Fuller et al.* v. *Talbot,* 23 Ill., 361; *Frank* v. *Scruger,* 18 Ill., 419; *Chicago, Burlington and Quincy Railroad Co.* v. *George,* 19 Ill., 517.

Railroads are common carriers and bound by the common law rules applicable to such character.   They may, however, restrict their general liability by special contract, so as only to remain liable for gross negligence, fraud or wilful misfeasance.   *Illinois Central Railroad Co.* v. *Morrison,* 19 Ill., 139; *Western Transportation Co.* v. *Newhall,* 24 Ill., 468.

And this doctrine is abundantly sustained by authority. 2 Ohio State Rep., 131; *Shaw* v. *York and N. M. Railroad Co.,* 6 Eng. Rail. Ca., 87; *Austin* v. *Manchester and S. Railroad Co.,* 5 Eng L. and E., 329; *Same,* 11 Eng. L. and E., 506; *Carr* v. *L. and T. Railroad Co.,* 14 Eng. L. and E., 340; *Chapindale* v. *L. and T. Railroad Co.,* 7 Eng. L. and E., 395; *Morville* v.

*Great Northern Railroad Co.*, 10 Eng. L. and E., 366; *Dorr* v. *Steam Navigation Co.*, 1 Kem., 491; *Steam Navigation Co.* v. *Merchants' Bank*, 6 How., 382; *Camden and Amboy Railroad Co.* v. *Baldauf*, 16 Penn., 67; *Beekman* v. *Rouse*, 5 Rawle, 179; *Bingham* v. *Rogers*, 6 Watts & S., 495.

I freely admit that the liability of the carrier is not in any way changed by the mere fact of a *gratuitous* carriage.

But in the case of a gratuitous carriage, the carrier may, by special contract with the passenger, stipulate that the passenger shall assume every risk, except those arising from the fraud, or reckless and culpable negligence of the *carrier himself*.

This results from the fact that *the carrier is not bound to undertake a gratuitous carriage — he cannot be compelled by law to do so*. And the doctrine is well settled both in England and in this country, that as to any carriage, whether of goods or persons, which a carrier is not bound by law to undertake, he may stipulate by special contract what risk he will assume, except that he may not contract against injury resulting from his own personal fraud, or his own personal gross negligence, which is evidence of fraud, or his own personal wilful or reckless conduct.

This last would be *contra bonos mores*, and therefore void, but as to all other negligence, including that of servants, he may contract. We know of no case in the books that does not sustain this doctrine. 1 American Railway Cases, 181–4, note; *Welles* v. *New York Central Railroad Co.*, 26 Barb., 641; *Welles* v. *New York Central Railroad Co.*, 24 N. Y., 181; *Perkins* v. *New York Central Railroad Co.*, 24 N. Y., 196; *Shaw* v. *North Midland Railroad Co.*, 6 Eng. Rail. Ca., 87; *Austin* v. *Manchester and S. Railroad Co.*, 5 Eng. L. and E., 629; *Austin* v. *Manchester and S. Railroad Co.*, 11 Eng. L. and E., 509; *Carr* v. *Lancashire and Y. Railroad Co.*, 14 Eng., L. and E., 304; *Chippendal* v. *Lancashire Railroad Co.*, 7 Eng. L. and E., 395; *Great Northern Railroad Co.* v. *Moreville*, 10 Eng. L. and E., 366.

In all these English cases, the court held the contracts valid, as the railway companies were not common carriers of stock, and *were not bound to undertake the contract, and, therefore, could, by contract, limit their liability.*

So also in *Wells* v. *The Steam Navigation Co.*, 2 Comst., 204.

The court, in speaking of certain bailees, says: "They are not like common carriers and inn-keepers, bound to accept employment when offered, *and may make just such stipulations as they please concerning the risk to be incurred—they may say, we will answer for nothing but a loss happening through our own fraud and want of good faith.*"

But the appellee insists, that though a carrier may, by contract, limit his responsibility, he cannot exempt himself from gross negligence, either of his servants or himself. The cases cited to sustain this doctrine are all cases *where the carrier received pay for the work done,* and do not meet the point we make. They were all cases where the carrier *was bound to undertake the service.* Mr. Justice BREESE, in the case cited in 19 Ill., 141, expressly endorses the English rule, which is laid down in the cases above cited, and allows the carrier, in a case of gratuitous carriage, to say by his contract: "*We will answer for nothing but a loss happening from our personal fraud or want of good faith.*" And to the same effect is *Newhall's case*, 24 Ill., 368.

The appellee insists that the endorsement upon the back of the free ticket was only a notice, and not a contract, and cites 24 Ill., 468.

We are aware there is a large number of cases sustaining the doctrine, and we think properly, that an endorsement upon a passage ticket which has been *purchased* by the passenger, is a notice, and not a contract. *Morris* v. *Bay State*, 4 Bosw., 225; *Hollister* v. *Nowlen*, 19 Wend., 234; *Cole* v. *Goodwin*, 19 Wend., 251; *Camden and Amboy Railroad Co.* v. *Belknap*, 21 Wend., 354; *Clark* v. *Fayon*, 21 Wend., 153; *Alexander* v. *Green*, 3 Hill, 9; *Powell* v. *Myers*, 26 Wend., 594; *Quinby* v. *Vanderbilt*, 17 N. Y., 306.

The ruling in these cases is put upon the ground, that such a ticket is only intended as evidence to conductors of a payment of fare. And the reason why it is held to be but a notice is because the presumption arises—*First,* That the passenger never knew of it; and *Second,* That he did not assent to it if he did know it.

But here the case is quite different.

The passenger had, on the 2d day of January, applied for and received a free ticket as a gratuity, which entitled him to ride upon the cars of appellant FREE, up to the first day of the next April, subject to the conditions thereon, *that is, at his own risk.* And the presumptions of law are—*First,* That he knew of the contents of the endorsement. *Second,* That he assented to the conditions imposed thereby.

Several days after receiving the pass, he takes his seat in the train, and claims the right to be there by virtue of the pass, which itself shows the agreement under which he stipulates to ride.

The act is deliberate and well considered, is fairly understood by the passenger, and must, it seems to us, be held to show his assent to and ratification of the contract.

This was expressly so held in the cases heretofore cited. *Wells* v. *New York Central Railroad Co.,* 24 N.Y., 181; *Perkins* v. *New York Central Railroad Co.,* 24 N.Y., 196. And in the case of the *Western Transportation Co.* v. *Newhall,* 24 Ill., 468, cited by appellee.

Mr. JUSTICE BREESE delivered the opinion of the court:

This was an action on the case brought by the appellee against the appellant in the Cook county Circuit Court, for an injury received by appellee while riding on appellant's cars.

The general issue was pleaded, and also three special pleas, setting up, as a defence, the fact, that without any consideration, appellant had given to appellee a free ticket or pass to ride on the railroad for a certain time, on which ticket was

endorsed this agreement:—"The person accepting this free ticket assumes all risks of accidents, and expressly agrees that this company shall not be liable, under any circumstances, for any injury to the person or for any loss or injury to the property of the passenger using this ticket."

A demurrer to those pleas was sustained, and the only question arising upon them is, as to the effect of this agreement.

There was also a plea of release by appellee to appellant, as follows: "That after the committing of the several grievances in etc., and before the commencement of this suit, to wit, on etc., at etc., the plaintiff, for a valuable consideration to him in hand paid by the said defendant, did release and forever discharge the said defendant of and from any and all liability to the said plaintiff for or by reason of the said several supposed grievances, and each and every of them, in the said declaration set forth, concluding with a verification. To this plea, a general demurrer was sustained.

The questions presented by the record for our deliberation are, the validity of these pleas, and another question as to the propriety of certain instructions given for appellee, and the incidental question of damages which we will not consider at this time.

It is insisted by appellant, that the endorsement on the free ticket was in all respects a valid agreement, and was a perfect immunity to the company for any accident or injury that might happen to the person holding it while upon the cars, no matter how the injury might be occasioned. That the holder assumes all the risks of injury from the negligence of the servants and agents of the company, and that it was competent for the parties to make the agreement, and when made is valid and binding.

The first case cited by appellant, in support of this proposition is the case of *Welles* v. *The New York Central Railroad Co.*, 26 Barb., 641, a case quite similar to the one before us.

In that case it was held, such agreements are valid, and exempt the company from all injuries, except such as are the

result of fraudulent, wilful or reckless misconduct on the part of the defendant's officers or agents. It is there held also, that it is now an admitted principle that a common carrier, like other bailees for hire, may limit his risk by express contract, although a carrier cannot contract for an exemption from losses arising from his own personal fraud or gross negligence. Such a contract would be *contra bonos mores* and void.

.This case was taken to the Court of Appeals, where it was held, there was nothing illegal in such contracts, and that by a fair construction, their stipulations cover every degree of negligence, save gross negligence, which is evidence of fraud or of wilful injury. The court also held, that though this rule applied to individual carriers of persons, it could not apply to corporations engaged in that business. The court say, fraud and wilful misfeasance include a will, a motive, and a corporation, as such, can have no motive, no will, though its agents may have both; and it would hardly do to hold the property of corporations liable for the wilful or criminal act of a person employed by the corporation, as such acts cannot be said to be done in the course of his employment.

And the court further say, that the term "gross negligence," as used by the law, has a technical meaning, which is not properly applicable to those acts of servants of a corporation for which the corporation is responsible; though as between their acts which are slightly negligent, and those which are very negligent, there is no different rule of responsibility. It is the fact of negligence, mere negligence, and not its degree, which incurs the liability.

That the contract in question is, simply, a contract not to be liable for the mere negligence of the agents of the company, and that the judge who tried the cause was not authorized, by the agreed state of facts on which the case was tried, to find that the injury was the result of "gross negligence," and that the case must be considered as if the word "gross" were omitted in the finding. Justice

SOUTHERLAND who dissented, held the contract for exemption was illegal and void as against public policy, as tending to lessen the care such companies are required to bestow, and which is imposed on them as a public duty as common carriers of persons and property. This case also holds the company would be liable for gross negligence.

The next case cited by appellant is the case of Smith, administrator of Ward, against the same railroad company, 29 Barb., 132. That case also held, that while a carrier of passengers may, by positive stipulation, release himself, to a limited extent, from the consequences of his own negligence or that of his servants, the contract to enable him to do so must be clear and explicit in its terms, and plainly covering such a case. The immunity of the carrier must be shown on the face of the contract. The company was held liable for the gross negligence and want of ordinary care of their servants and agents. The holder of the free ticket in this case had taken the risk of personal injury "from whatever cause."

The case of *Bissell, administratrix*, against *this same Company*, Ibid, 602, shows the same contract, and the determination of the court was the same, that the company was liable for gross negligence, and Justice SMITH, who delivered the opinion of the court in the case of *Welles* v. *this Company*, 26 Barb., 641, and who concurred in the ruling of this case of Bissell, thought the verdict in it could be sustained without involving any inconsistency between the two cases, for the reason that Bissell's case was put on the ground of gross negligence, and that there was no evidence in Welles' case showing how the collision happened.

The next case is that of *Perkins, administratrix*, v. *this same Company*, 24 N. Y., in which it was held, that a railroad corporation could not, by contract, exempt itself from liability to a gratuitous passenger for damage resulting from its own wilful misconduct, or recklessness, which is equivalent thereto. But it may contract for exemption

from liability from any degree of negligence in its servants, other than the board of directors or managers who represent the corporation itself, for all general purposes.

In Welles' case, as in this, the New York courts attempt a distinction between the negligence of the corporation, acting through its president and board of directors, and the negligence of their employees or servants and agents, a distinction which, we confess, we are unable to perceive. All corporations act by and through their agents, for whose acts, in the line of their business, the corporation appointing them is held liable.

This court has held, that a railroad corporation is liable in an action of trespass for an assault and battery committed by an employee of the corporation on a passenger on the train. *St. Louis, Alton and Chicago Railroad Co.* v. *Dalby,* 19 Ill., 353.

In that case we said, in answer to the argument, that as the corporation has no lawful authority to order an unlawful act to be done, or to order a lawful act to be done in an improper way, or so that it shall violate the rights of others, the act, whenever such is the case, becomes the act of the agent and not of the corporation, that if this position was adopted, a corporation could never be held for any affirmative act, for whenever such affirmative act is a violation of the rights of another, the ready and invariable answer would be, that because such act was wrongful, it was, therefore, unlawful, and not authorized by its charter, but the individual act of those who represent it and exercise its functions. The result then would be this: if the act was right and lawful, then it is the company's; but if it was wrong and not legally justifiable, then it was not the act of the company, which, it would be said, was a stranger to it. The result of the position is, that the company cannot be liable for any trespass, for a trespass is an unlawful act, and no company or corporation can be legitimately empowered to do an unlawful act. Now there are cases to be found, mostly in the Year Books, where courts have been misled by this sort of reasoning, and held that no corporation can be liable for any trespass.

But such never was the rule either of the civil or the common law, as applied to private remedies for such wrongs.

It is admitted that a corporation may commit a trespass on property, then how absurd it is to say, that if the servant of the company throws the passenger's baggage from the cars, it is the act of the company, but if he throws off the passenger himself, it is not.

This case goes the whole length of holding a corporation responsible for the unlawful acts of its employees or agents, which includes wilful injuries, or injuries resulting from gross negligence.

All the cases cited by appellant admit the validity of the agreement set forth, but confine its operation to cases of ordinary, but not gross negligence. The same ruling has obtained in the courts of Great Britain. *The York, Newcastle and Berwick Railway Co.* v. *Crisp et al.*, 78 Eng. C. L., 527; *Shaw* v. *The York and North Midland Railway Co.*, 66 Ib , 345; *Austin et al.* v. *The Manchester, Sheffield and Lincoln Railway Co.*, 70 Ib., 453. And by this court, in the case of *The Illinois Central Railroad Co.* v. *Morrison et al.*, 19 Ill., 136. It was there said the rule established in England and in this country, that railroads have a right to restrict their liability as common carriers by such contracts as may be agreed upon specially, was a good rule, the railroad companies still remaining liable for gross negligence or wilful misfeasance, against which good morals and public policy forbid they should be permitted to stipulate. A reference was made, as authority for this doctrine, to 1 American Railway Cases, in note 181; Redfield on Railways, 264; 2 Ohio State Rep., 131.

And we believe the rule is now universal in the courts of this country.

All the cases cited by appellant admit that acts of gross negligence are not exempted by the agreement pleaded. The declaration was in case, in three counts, for gross negligence, to which the agreement did not apply, consequently, the

court decided correctly in sustaining the demurrer to the pleas, gross negligence not being within the spirit of the contract.

The fourth plea was demurrable, for the reason, that it attempts to confine the negligence complained of to the negligence of the agents and employees of the company, for which the company was responsible, as we have said above.

While we hold this agreement did not exempt the railroad company from the gross negligence of its employees, we are free to say that it does exempt it from all other species or degrees of negligence not denominated gross, or which might have the character of recklessness. For such unavoidable accidents, as will happen to the best managed railroad trains, this agreement would be a perfect immunity to the company. It is not, as appellee's counsel seems to suppose, a mere notice, like the one in the case of *Western Transportation Co.* v. *Newhall,* 24 Ill., 466. In that case, a condition was printed on the back of the bill of lading or receipt for the powder. We held this was but a notice, by which the carrier's liability could not be restricted even if brought home to the shipper, but that it could be limited by a special contract with the owner of the goods.

The free ticket was a gratuity, and the acceptance and use of it establishes the endorsement thereon as an agreement between the party giving and the party receiving. By using the ticket, he assents to the terms on which it was given, and it becomes, to all intents and purposes, an agreement. In Newhall's case there was no agreement, but a mere notice, and Newhall paid for the carriage of his goods.

We look upon this free ticket as a special contract in every sense of those words, and as covering all negligence save those we have specified.

The negligence in this case was found by the jury to have been gross, amounting, as we are inclined to think, to recklessness on the part of the conductor having charge of the

train in which appellee was a passenger, consequently the company are not protected by this special contract.

But there is one error of the court below which must reverse this judgment. The defendant's fifth plea sets up a release of all damages occasioned by the grievances complained of, for a valuable consideration paid by the defendant to the plaintiff.

This plea is a good plea of a release, both in form and substance.

We have looked into the books, and can find no case wherein it has been held in pleading a release that it should be averred it was under seal. A release, *ex vi termini*, imports a seal, and it is matter of evidence whether it have a seal or not, if a seal be necessary. The plea should have been traversed. The demurrer admits the release for a valuable consideration. But this court said, in *Benjamin* v. *McConnell et al.*, 4 Gilman, 536, and we repeat here, when a valuable consideration is expressed in a release, or otherwise proved to have passed between the parties, it is totally immaterial whether the instrument is sealed or otherwise. In *Ryan* v. *Dunlap*, 17 Ill., 40, this court held that a release of a debt secured by mortgage need not be under seal, *a fortiori*, it need not be, where prospective damages are released.

The declaration in the first, second and fourth counts avers gross negligence on the part of appellants, whilst the third avers negligence only. Four of the special pleas are to the whole declaration, but they do not answer the charge of gross negligence, consequently the demurrer to them was properly sustained. The appellant will have leave to amend, so as to apply the pleas to the third count, which alleges negligence only, should he desire so to do.

For this error, in sustaining the demurrer to the fifth plea, the judgment must be reversed and the cause remanded.

As to the instructions for appellee, we perceive no inconsistency or error in them.

*Judgment reversed.*