THE   JACKSONVILLE   SOUTHEASTERN   RAILWAY
COMPANY
. v.
ELIZUR SOUTHWORTH.

*Railroads—Personal Injuries—Pass—Gross   Negligence— Evidence—*
*Instructions—Examination of Jurors—Special Interrogatories.*

1.   In an action against a railway company to recover damages for an injury received by a person while riding on its road upon a complimentary pass, it is *held:* That a question to a juror by plaintiff's counsel as to whether, if it should appear in evidence that the plaintiff, when he received the injury, was riding on a pass, that fact would influence his verdict in the case, was not material error.

2.   A question to which no objection was made in the trial court can not be considered here.

3.   Where evidence tends to show a company's track to have been in the same condition shortly before and after the accident occurred, it raises a presumption that it was in such condition at the time thereof; and such evidence, if material, is admissible.

4.   Where portions of an answer in a deposition are improper, the same should be eliminated before the deposition is read to the jury; but where this is not done and the jury are plainly told that such evidence is excluded from them and not to be considered, the reading of the same does not constitute reversible error.

5.   Under the issues in the case presented it was proper for the plaintiff to introduce evidence to show the condition of defendant's track for a reasonable distance from the place where the accident occurred.

6. A clause in an instruction setting forth that "gross negligence is defined by the law to be wilful or intentional negligence," is erroneous.

7. An instruction in behalf of defendant, ignoring one of the disputed facts upon which plaintiff based his claim, may be modified by the trial court.

8. The trial court necessarily possesses some discretion as to the number and character of the special interrogatories to be submitted to the jury, and in the case presented that discretion was not abused.

[Opinion filed February 14, 1890.]

IN ERROR to the Circuit Court of Montgomery County; the Hon. J. J. PHILLIPS, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for plaintiff in error.

Messrs. BROWN, WHEELER & BROWN, for defendant in error.

CONGER, J. This was an action on the case. The declaration in the first count alleged in substance, that on the 11th day of March, 1887, defendant in error was a passenger from Virden to Litchfield, on the railway of plaintiff in error, and was using an ordinary complimentary pass, upon the back of which was printed: "This pass is not transferable, and the person accepting it assumes all risk of accident and damage to person and baggage." That the company permitted its track to be out of repair, by being rough and uneven, the ties being rotten, the road bed too narrow to support the track; the rails to become worn and battered and split; and by the use of short rails of eight feet, and the insecure fastenings of the rails, and by cars too light to be used on the track at a high rate of speed; and that by the use of defective machinery and the running of the cars at a high and dangerous rate of speed, the cars were derailed, and defendant in error was injured; the second count charges substantially the same, except that it did not set out the pass. A plea of not guilty was filed and cause tried by jury resulting in a verdict of $6,500 in favor of defendant in error.

We think the evidence fully warranted the jury in finding that the servants of plaintiff in error were guilty of gross

negligence, and it was upon the theory that gross negligence alone would warrant a recovery that the case was tried, and instruction given.   Ill. C. R. R. Co. v. Read, 37 Ill. 484.

Various errors are assigned which we will notice in the order named in the brief of plaintiff in error.   In the examination of the jury by counsel for defendant in error, the court, over objection, permitted the following question to be asked: " Would the fact, if it should be shown in evidence that the plaintiff was riding on a free pass at the time of the injury, influence your judgment or verdict in the case?"   No challenge was made to any juror because of the answer to this question, hence it may be assumed such questions were asked for the sole purpose of affording information to counsel, upon which to intelligently exercise a peremptory challenge, and for such purpose we see no serious impropriety in the question.

It is said the use of the pass was a fact stated in the declaration, and counsel say:   "Can it be said that a juror under such circumstances is not to be influenced by the fact?   To so hold is in effect to hold that the juror must disregard the admission of the record, because the facts alleged on the face of the declaration show that the plaintiff had, for a good consideration, contracted to release the defendant from liability except upon certain conditions."

It was also a fact stated in the declaration that the defendant was a railway corporation, and it would have been proper to have asked a juror if such fact would influence his judgment or verdict.   It is true, either of these questions, if confined to the literal meaning of the words, would give no light as to the juror's feelings or prejudices, but such questions are commonly understood to mean, would such facts in the mind of a juror have an undue importance and hence improperly influence his judgment in reaching a verdict.   While the question is not accurate, and is subject to criticism, we can not think it worked any injury to plaintiff in error.

Second.   Objection is made to certain questions asked Dr. Rauch, which were as follows:

Q.   " Is it or not, ever true, that injury to the spine from

concussion, or perhaps otherwise, of which the patient may for the time be ignorant himself, may afterward develop into serious injury?"

A.  "It is."

Q.  "Is it or not a fact, that the injury to this spine from such cause, apparently unknown to the patient at the time, may develop sooner or later, weeks or months, perhaps, after the injury has been received?"

A.  "Yes. In this connection I would simply make this remark, that when I speak of this injury to the spinal column, I also include the spinal marrow that is inside."

Dr. Rauch had, as a physician, attended upon defendant in error perhaps three weeks after the injury occurred, and from that time on for a considerable period, and had already detailed to the jury the symptoms he found, and the opinion he had formed in reference to the character and degree of the injury received by the defendant in error, hence we see no objection to these questions, except possibly that they were leading in form; but that objection not having been made upon the trial, it is too late to raise it for the first time in this court.

Third.   It is insisted the court admitted improper evidence, as stated by counsel for plaintiff in error upon this point. "The objections are, first, the testimony should have been confined to the condition of the road at the time of the accident, or at least to a period not later; and second, the evidence should have been confined to that part of the road where the accident did in fact occur." The condition of the track prior to or after the injury, is not material or important except in so far as it may tend to show its condition at that time, which is the real question for the jury to determine. One Howard, a witness, had stated to the jury that he had passed over the track a few days before the accident, and described its condition, and then stated that he again saw the track in July, following March (the time of the accident), and was then asked its condition as compared with its condition at the time of the accident or shortly before, and answered that he could not see any alteration. Where evidence tends to show the track to be in the same condition shortly before and after the acci-

dent occurred, it raises a presumption that it was in the same condition at the time of the accident, and hence bears upon one of the material questions to be determined by the jury.

Objection is also made to the depositions of Schlon and McKean, because, with evidence that was proper and legitimate in reference to the condition of the track, they also spoke of what occurred when repairing the track, in August and September following the accident. The court, in passing on this objection, said:

" While I can not separate the answer to a question, where the question is proper, very well—that which is improper and that which is proper—without breaking the connection of the question, so that it may be misleading or misunderstood by the jury, I can only say that the question of repair can not affect the issue that is trying in any manner whatever, because the reason for the repair may grow out of so many different causes, occurring at different times, and with a different purpose in view; that nothing can be assumed by the jury in consequence of that, and any evidence of that character is · excluded from them and not to be considered by them in making up their verdict." The depositions were then read to the jury. Where there are portions of an answer in depositions that are improper, and the jury are plainly told, as they were by the trial court in this case, that such evidence is excluded from them and not to be considered, we do not think it so serious an error as to justify a reversal, when it is apparent no harm has resulted, although the better practice would be to eliminate the objectionable features from the deposition before it is read to the jury.

The second branch of this objection is, that the evidence should have been confined to the place where the accident occurred, which place is defined by counsel for plaintiff in error in their brief, as " the part of the road where any evidences could be seen immediately after the accident, of any giving way of the track in any of its parts, or evidences of the train having left the rail." This would doubtless be the rule where the sole cause of the accident is a defect in the track, which can be located, such as a defective culvert, bridge

or broken rail. But in the case at bar it is agreed by both parties that the immediate cause of the derailment of the train was the breaking of one of the car wheels, and the cause of such wheel breaking was the point in contention.

The plaintiff in error maintained that the wheel broke from some latent defect, under reasonable usage and strain, and after it had been properly tested, while defendant in error insisted the broken wheel was caused by the train running too rapidly over a rough and uneven track, thereby causing the cars to oscillate from side to side, throwing the flange of the car wheel against the rails with such force, as, by a constant repetition of such blows, to break it. It was therefore proper for defendant in error, in seeking to sustain his theory, to show to the jury the condition of the track in this respect, for such a distance from the place of the accident as would throw light upon this question.

Such inquiry, however, should be limited by the distance over which the dangerous rate of speed was maintained, immediately preceding the accident, and which fairly might be regarded as one continuous act of negligence, and the immediate cause of the breaking of the wheel. We think the inquiry was governed by these principles, and hence there was no error in this respect.

Fourth. Error is assigned upon the instructions given and refused. The first and fourteenth instructions presented by plaintiff in error attempted to define gross negligence, in the following words: " That gross negligence is defined by the law to be wilful or intentional negligence." The court struck this language out of the first instruction and refused the fourteenth. To sustain this language in the instructions the case of T. W. & W. R. R. Co. v. Beggs, 85 Ill. 84, is relied on, but we fail to see its bearing on the case at bar. In that case the court in the opinion clearly give the reason for using the language in reference to what would, under the circumstances of that case, make the company liable. The court say: "He (Beggs) was traveling on a free pass issued to one James Short, and not transferable, and passed himself as the person named in the pass. By his fraud he was riding on the car. Under

such circumstances the company could only be held liable for gross negligence, which would amount to wilful injury." If we understand this language properly it does not assert, as contended by counsel for plaintiff in error, that gross negligence can not exist without wilful injury, but that there is a degree of gross negligence which can only arise from wilful or intentional injury. But whatever may be the true meaning of the language it has no application to the present case, as it is not pretended that defendant in error was guilty of any fraud in the use of his pass, and for the further reason that we have, in C., B. & Q. R. R. Co. v. Johnson, Adm'r, 103 Ill. 521, a definition of the term "gross negligence," with which the objectionable language in the instructions in the present case was wholly inconsistent. The court in that case say: "Gross negligence is the want of slight diligence." "When there is a particular intention to injure, or a degree of wilful or wanton recklessness, which authorizes the presumption of an intention to injure generally, the act ceases to be merely negligent and becomes one of violence or fraud." "In negligence there is no purpose to do a wrongful act or to omit the performance of a duty." "Negligence, even when gross, is but an omission of duty; it is not designed and intentional mischief, although it may be cogent evidence of such fact." "What is less than slight negligence the law takes no cognizance of as a ground of action, and beyond gross negligence the law, while recognizing there may be liability for trespass because of a particular intention to do wrong, or of a degree of wilful and wanton recklessness which authorizes the presumption of general intention to do wrong, recognizes no degree of negligence."

Instruction No. 3 was properly modified because, as presented, it entirely ignored one of the disputed facts upon which defendant in error based his right of recovery, i. e., the dangerous speed of the train. As a series we think the instructions fairly presented to the jury the law of the case, and that no error of sufficient importance exists in them to authorize a reversal.

The fifth objection is that the court refused to submit to

the jury certain questions for special findings, and modified others which were given. It would be useless to state them all. There must of necessity be a discretion in the court as to the number and character of special findings to be submitted to the jury, and unless it is apparent that such discretion has been abused, to the prejudice of the party complaining, the action of the court should be upheld. After a careful examination we are satisfied that justice has been done in this respect. Those which the court refused to submit to the jury were either calling for answers upon mere evidentiary facts, or were irrelevant and were objectionable under the rule announced in C. & N. W. R. R. Co. v. Dunleavy, 129 Ill. 132.

Upon a careful consideration of the whole record we are satisfied that plaintiff in error had a fair trial, and that justice has been done.

The judgment of the Circuit Court will therefore be affirmed.

*Judgment affirmed.*